UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THERESA M. ELLIS, | : | Civil Action No.: 05-726(MLC) |
| Plaintiff, | : | |
| v. | : | |
| ETHICON, INC., JOHNSON & JOHNSON, INC. and JOHN DOE(S), JOINTLY, SEVERABLY AND/OR IN THE ALTERNATIVE, | : | MEMORANDUM OPINION |
| Defendants. | : | |

**HUGHES, U.S.M.J.**

This matter is before the Court upon the Motion of the Plaintiff, Theresa Ellis, ("Plaintiff"), to Disqualify Counsel to Ethicon Inc. and Johnson & Johnson, (collectively "Defendants"), pursuant to the Rules of Professional Conduct ("R.P.C."). Defendants oppose the Motion. The Court reviewed the written submissions of the parties and conducted oral argument on October 3, 2005. For the reasons that follow, the Plaintiff's Motion is denied.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was an employee of Ethicon, a wholly owned subsidiary of Johnson & Johnson, from September 1997 until October 2001. (Pl's Complaint at 3, ¶ 10). She was employed as a Quality Assurance Engineer working in new product development. *Id.* In January 1999, Plaintiff suffered injuries as a result of an automobile accident, and was forced to take short-term disability. *Id.* at ¶ 11, 12. In August 1999, Ethicon allowed Plaintiff to return to work on a restricted work schedule to accommodate her after the accident. *Id.* at ¶ 13.

1

In July 1999, Plaintiff met with Thomas P. Scrivo, Esquire, and Craig J. Compoli, Jr. Esquire, from the law firm of McElroy, Deutsch, & Mulvaney ("MDM") to discuss possible claims against Defendants for discrimination based on her disability.  (Ellis Certif. at ¶ 3).   In May 2004, the law firm of Carpenter Bennett & Morrissey ("CBM") merged with MDM and the firm became McElroy, Deutsch, Mulvaney, & Carpenter ("MDMC").  (Dee Certif. ¶ 4).  CBM had a long-standing relationship as counsel to Johnson & Johnson and Ethicon, which continued after the merger. *Id.*

When Plaintiff met with Mr. Scrivo and Mr. Compoli in 1999, she submitted various documents to the attorneys, including her Johnson & Johnson Benefits Summary Plan Description.  (Pl's Br. at 3).  In addition, Plaintiff submitted medical records regarding her disability.  (Ellis Certif. at Exhibit A).  Plaintiff and the attorneys also had a number of conversations and email exchanges during this period.  (Pl's Br. at 3)*.*  However, no retainer agreement was signed and Mr. Compoli stated that he never created a client file for Plaintiff.  (Compoli Certif at ¶ 8).  He certified that "[i]f this firm had been retained or if I was in a position to provide advice and counsel to her, I would have opened a file and obtained a signed retainer agreement." *Id.*

In September 2000, Plaintiff determined that she was not going to pursue a claim against Defendants.  *Id.*  Her decision was based in part on the fact that she received a promotion and a significant bonus that year.  *Id.*   In response,  Mr. Scrivo and Mr. Compoli returned Plaintiff's original documents to her, including her Benefits Plan Summary Description and medical records, with a letter captioned "Prospective - Theresa Ellis Ethicon Disability."  (Ellis Certif. at Exhibit A).  The attorneys maintained other basic correspondence records, such as emails and

2

faxes, at MDMC in the event Plaintiff decided to pursue her claim in the future. *Id.*  Plaintiff never chose to do so with MDMC.  In addition, any such correspondence was subsequently "destroyed at least four years ago when [Mr. Compoli] cleaned out [his] office in preparation for moving from the second floor to the third floor of [MDMC]."  (Compoli Certif. at ¶ 11).

In April 2001, Plaintiff obtained another medical evaluation, which indicated that she suffered from Mild Traumatic Brain Injury ("MTBI"). *Id.* at ¶ 18.  As a result, Plaintiff entered into another period of short-term disability. *Id.* at ¶ 19.  By October 15, 2001, Plaintiff sought accommodation from Ethicon to enable her to return to work. *Id.* at ¶ 20.  On or about October 15, 2001, Ethicon advised Plaintiff that it was unable to accommodate her return to work and that it was placing her on long-term disability. *Id.* at ¶ 21.  Plaintiff's regular employment with Ethicon terminated on October 22, 2001. *Id.*

As a result of her termination, and the alleged lack of accommodation made by Defendants, Plaintiff filed charges of disability and racial discrimination with the New Jersey Division on Civil Rights ("DCR") and the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued Right to Sue Notices on November 4 and December 2, 2004. Plaintiff subsequently filed the instant complaint alleging violations of the Americans with Disabilities Act ("ADA") and Title VII, on February 2, 2005. [Docket #1].  In response, Defendants retained MDMC to defend against Plaintiff's claims.

In an entirely unrelated class action suit against Johnson & Johnson on March 1, 2005, an attorney with MDMC took Plaintiff's deposition.  (Pl's Br. at 4).  At the deposition, Ms. Gardiner questioned Plaintiff about her medical history and the reasons for her termination from Ethicon,  (T:8-19 to 23; T:17-22-23), and about claims filed alleging disability discrimination

3

(T:8-22 to 25).  There was no discussion about Plaintiff's prior conversations with Mr. Scrivo or Mr. Compoli.  At oral argument on October 3, 2005, in response to a question posed by the Court, Ms. Gardiner indicated that she entered her appearance as a member of the MDMC firm at the March 1, 2005 deposition.  Plaintiff failed, however, to advise anyone of a prior relationship with the firm at that time.

      In July 2005, Plaintiff retained her current counsel.  MDMC claims that it was not until mid-July 2005, when they were alerted by newly retained Plaintiff's counsel, that there were prior meetings between Plaintiff and Mr. Scrivo and Mr. Compoli at MDMC.  (Gardiner Certif. at ¶ 12).  Ms. Gardiner questioned Mr. Scrivo and Mr. Compoli to determine if they remembered meeting with Plaintiff.  (Gardiner Certif. at ¶ 13).  Neither attorney initially recalled speaking with Plaintiff.  *Id.*  Ms. Gardiner immediately advised both attorneys not to divulge any confidential information, if any, provided by Ms. Ellis.  *Id.*  In addition, Ms. Gardiner sent written notification to the entire MDMC firm, pursuant to R.P.C. 1.18 and 1.10(f), to inform them of the screen erected between Mr. Scrivo and Mr. Compoli and other attorneys at MDMC.  *Id.*  Mr. Scrivo and Mr. Compoli both stated that they have not revealed any confidential information about Plaintiff to any other attorneys in the firm.  (Scrivo Certif. at ¶ 5; Compoli Certif. at ¶ 12).

      Ms. Gardiner then informed Plaintiff by letter that the screening process was implemented and that Mr. Scrivo and Mr. Compoli would not reveal any potentially confidential information they may have received in their prior conversations with Plaintiff, including Plaintiff's Benefit Summary Plan Description and medical records,  (Ellis Certif. at ¶ 12), although, both attorneys certify that they had previously returned this documentation.  (Compoli

Certif. at ¶'s 10, 11; Scrivo Certif. at ¶ 5). In addition, Mr. Compoli and Mr. Scrivo certify that they have little, if any, recollection about the substance of the meeting with Plaintiff. (Compoli Certif. at ¶ 12; Scrivo Certif. at ¶ 3).  Specifically, Mr. Compoli states that "I am aware that I have an obligation not to reveal any confidential information relayed to me by the plaintiffs, should I recall any, and I am complying with the screening procedures in place in this action." (Compoli Certif at ¶ 12).  Mr. Scrivo similarly states that he has "no recollection of the content of the meeting [with Plaintiff] nor would I remember the plaintiffs if they were standing in front of me.  I have no recollection of any emails or telephone calls with either Ms. Ellis or her husband nor do I have any documents belonging to or pertaining to them." (Scrivo Certif. at ¶ 3).  He continues by stating that he is "aware of the ongoing screening of me from this matter and am complying with it and have had, and will have, no involvement in it.  I understand my obligation to keep confidential any information given to me by plaintiffs, should I recall any such information." (Scrivo Certif. at ¶ 5).

     Despite the screening, Plaintiff properly filed the instant Motion to Disqualify MDMC as Defendants' counsel on August 26, 2005 to bring the matter to the attention of the Court. [Docket #8].   Plaintiff claims that she is a former client of MDMC whose interests in the present matter are adverse to Defendants, and, therefore, MDMC should be disqualified from representing Defendants in the current matter.  *See* R.P.C. 1.9 (prohibiting representation of a new client if the new client's interests are adverse to a former client in a matter substantially related to the prior representation).  Defendants oppose Plaintiff's motion and claim that Plaintiff was only a prospective client and pursuant to R.P.C. 1.18 Mr. Scrivo and Mr. Compoli were properly screened.  (R.P.C. 1.18 allows a firm to represent a new client with interests adverse to a

5

former prospective client if the attorneys who consulted with the prospective client are properly screened from participating in the new representation and from revealing any confidential information about the former prospective client.)

## II.     DISCUSSION

Plaintiff claims that Defense counsel must be disqualified because Plaintiff is a former client of MDMC in a matter substantially similar to the present matter, contrary to the prohibition against representing current clients with adverse interests to former clients.  (Pl's Br. at 6, 7-11). Defendants argue that Plaintiff was only a "Prospective Client" of MDMC and is not protected by R.P.C. 1.9.  (Defs' Br.  at 15, 20-26).  In addition, MDMC claims that R.P.C. 1.18, outlining the conduct of attorneys with former prospective clients, controls, and further, that MDMC properly screened Mr. Scrivo and Mr. Compoli from any interaction with the case, thus allowing the firm to represent Defendants in the present matter.  (Defs' Supp. Br. at 2-3).  The Rules of Professional Conduct, as adopted by the New Jersey Supreme Court,  govern attorney conduct in this Court, including representation of former clients.  L. Civ. R. 103.1.

### A.     *Former Clients*

An attorney may not represent a current client in a matter adverse to the interests of, and substantially similar to the representation of, a former client.  R.P.C. 1.9 (*emphasis added*). Specifically, R.P.C. 1.9(a) states in relevant part, that:

> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

The prohibitions in R.P.C. 1.9 are made applicable to a conflicted attorney's entire firm through R.P.C. 1.10.  Subsection (a) of R.P.C. 1.10 states that:

> When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by . . . RPC 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Therefore, if Plaintiff is a former client, not only would Mr. Scrivo and Mr. Compoli be prevented from representing Defendants, but so too would the entire MDMC firm.  Plaintiff claims that her contact with MDMC from 1999 to 2000 and the documents submitted by her to MDMC to assess her claim, establish her as a former client, thus R.P.C. 1.9 and R.P.C. 1.10 control.  Defendants argue that Plaintiff fails to establish herself as a former client and only qualifies as a former "Prospective Client," thus requiring the application of R.P.C. 1.18.

To disqualify MDMC under R.P.C. 1.9, and R.P.C. 1.10, Plaintiff must demonstrate that an attorney/client relationship was formed during the time period in which she had contact with Mr. Scrivo and Mr. Compoli from July 1999 through September 2000.  Plaintiff points to the length of time that the contact continued, the numerous emails and phone calls exchanged, and the fact that Mr. Scrivo and Mr. Compoli maintained certain documents at MDMC after Plaintiff decided not to pursue her claim.  However, Defendants note that no retainer agreement was ever signed, Plaintiff decided not to pursue her claim against Defendants, no case file was ever created, all of Plaintiff's confidential documents, including her Benefits Summary Plan Description and medical records, were returned, along with a letter identifying Plaintiff as a "Prospective Client," and Plaintiff's contact with Mr. Compoli was limited, as he "did not give

her any legal advice because she did not ask for any." (Compoli Certif. at ¶ 4).

The Plaintiff has the burden of proving the formation of an attorney/client relationship. *Alexander v. Primerica Holdings, Inc.*, 822 *F. Supp.* 1099, 1114 (D.N.J. 1993). The Court must analyze the facts of each case to determine if Plaintiff has met its burden. *Dewey v. R.J. Reynolds Tobacco Co.*, 109 *N.J.* 201, 205 (1988). An attorney/client relationship can arise by express contract, court order or implication. Michaels, *New Jersey Attorney Ethics*, at 232. Both parties agree that neither an express contract (i.e. retainer agreement) nor a court order exists in this case. Therefore, any finding of an attorney/client relationship here would have to be by implication.

To create such a relationship by implication, the Court must look at "the conduct of the parties, the surrounding circumstances, statements made by the lawyer, or some combination of all three." *Id.* at 235. The finding that a relationship has formed must be "objectively reasonable under the totality of the circumstances, which includes consideration of factors such as intent of the alleged client and attorney and payment arrangements." *Essex Chemical Corp.*, 993 *F. Supp.* at 253 (citing *Ageloff v. Noranda*, 936 *F. Supp.* 72, 75-76 (D.R.I. 1996)). *See also*, *State v. Bruno*, 323 *N.J. Super.* 322, 332-33 (App. Div. 1999) (consideration of reasonableness of clients belief that relationship has formed based on conduct of both parties). In determining whether the relationship was formed, the Court must consider the potential client's manifestation of intent that the lawyer provide legal services. *Restatement of the Law Governing Lawyers,* § 14(1). The Court must also consider whether the lawyer consented to undertake the representation or whether the lawyer knew or should have known that the person reasonably relied on him to provide the services. *Id.*

8

In the present case, Plaintiff initially met with Mr. Scrivo and Mr. Compoli in July 1999 to discuss the possibility of pursuing a claim against Defendants for discrimination based on her disability. (Ellis Certif. at ¶ 3). Plaintiff submitted various documents to the attorneys, including her Johnson & Johnson Benefits Summary Plan Description. (Ellis Certif. at ¶ 12). After the initial meeting, Plaintiff submitted various other documents for the attorneys' review, including the medical records identifying her present disability, although she did not meet with the attorneys in person again. (Ellis Supp. Certif at Exhibit A; Ellis supp. Certif at ¶ 2; Scrivo Certif at ¶ 4; Compoli Certif at ¶ 2).

In September 2000, Plaintiff decided not to pursue a claim against Defendants (Plaintiff had just been promoted and received a significant bonus). *Id.* In response to this decision, Mr. Scrivo and Mr. Compoli returned Plaintiff's original documents, including her Benefits Summary Plan Description and medical records, with a letter entitled "**Prospective**-Theresa Ellis Ethicon Disability." (*emphasis added*) (Ellis Certif. at Exhibit A). However, the attorneys maintained other, non-confidential records, such as faxes and electronic email, in the event Plaintiff decided to pursue her claim at a later date. *Id.* No retainer agreement was signed, no payment to the attorneys was ever made, Plaintiff never chose to proceed with her claim, and the instant Complaint was not filed until over four years after the last contact between Plaintiff and Mr. Scrivo and Mr. Compoli. While Plaintiff's contact with Mr. Scrivo and Mr. Compoli continued from July 1999 through September 2000, its frequency was sporadic at best. In addition, there is no evidence that Plaintiff could have reasonably believed that Mr. Scrivo and Mr. Compoli were acting as her attorneys. Absent too, is any evidence that the parties agreed to, or reasonably believed that, an attorney/client relationship ever existed.

Given that, by September 2000, Plaintiff chose not to pursue the matter against Defendants, all confidential documentation was returned to Plaintiff that same month, no retainer was ever signed and the contact between Mr. Scrivo, Mr. Compoli and Plaintiff was limited to general communications, the Court finds that an attorney/client relationship was never formed. Further, the letter from Mr. Scrivo and Mr. Compoli sent to Plaintiff in 2000 clearly identified her as a "Prospective Client," without any disagreement by Plaintiff of that designation. Thus, at most, Plaintiff was only a prospective client. Because no attorney/client relationship existed, MDMC is not automatically disqualified from representing Defendants in the present case, pursuant to R.P.C. 1.9 and R.P.C. 1.10.

B.      *Former Prospective Clients and R.P.C. 1.18*

In 2003, the New Jersey Supreme Court adopted R.P.C. 1.18 (effective January 1, 2004). This rule governs attorney conduct with former prospective clients. The rule "protects parties who have disclosed confidential information to counsel during a preliminary discussion, without requiring a court to strain to find that the preliminary discussion created a representation." Michaels, *New Jersey Attorney Ethics*, 2005 Edition, 246 (Gann 2004). Its purpose is to protect that confidential information from further disclosure, and to prevent its use in a matter adverse to the former prospective client. ABA Commentary to R.P.C. 1.18 at 3. It also allows the implementation of a timely screen to prevent a conflicted attorneys' firm from being disqualified under R.P.C. 1.10. R.P.C. 1.18 states that:

> (a) A lawyer who has had discussions in consultation with a prospective client shall not use or reveal information acquired in the consultation, even when no client-lawyer relationship ensues, except as RPC 1.9 would permit in respect of information of a former client.

> (b) A lawyer subject to paragraph (a) shall not represent a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the lawyer received information from the former prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (c).
>
> (c) If a lawyer is disqualified from representation under (b), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except that representation is permissible if (1) both the affected client and the former prospective client have given informed consent, confirmed in writing, or (2) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom and written notice is promptly given to the former prospective client.
>
> (d) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a "prospective client," and if no client-lawyer relationship is formed, is a "former prospective client."

In the present case, the Court has determined that no attorney/client relationship was established. Thus, the Court must analyze Plaintiff's claims for disqualification of MDMC as a former "Prospective Client." As a former "Prospective Client," Plaintiff claims that MDMC should still be disqualified because it did not implement a timely screen of Mr. Scrivo and Mr. Compoli, pursuant to R.P.C. 1.18. MDMC claims that it followed the directive of R.P.C. 1.18 and appropriately implemented a screen as soon as it became aware of the potential conflict.

In order to preserve the confidentiality of a prospective client, and to ensure that law firms are not needlessly disqualified from representing clients with adverse interests to former "Prospective Clients," R.P.C. 1.18 allows a firm to implement a screen to prevent confidential information from passing from the attorney who dealt with the prospective client to those now representing the adverse party. R.P.C. 1.0(l) defines the term "screened" as "the isolation of a lawyer from any participation in a matter through the timely adoption and enforcement by a law

firm of a written procedure pursuant to RPC 1.10(f) which is reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law." The screen must prevent the attorney from participating in the present matter. R.P.C. 1.18(d)(2)(I). It must also prevent the original attorneys from receiving compensation based on its firm's representation of a client with interests adverse to those of the former prospective client. *Id.* In addition, the conflicted attorney's firm must promptly notify the prospective client of the conflict and the screen. *Id.* at 1.18(d)(2)(ii).

In the present case, MDMC implemented a timely screening of Mr. Scrivo and Mr. Compoli. As soon as MDMC was alerted of the potential conflict by Plaintiff's counsel, it notified Mr. Scrivo and Mr. Compoli that they were not to reveal any information about Plaintiff to any other attorney in the firm. There was no occasion, prior to this notification in July 2005, when MDMC could have reasonably been aware of the potential conflict. MDMC also properly notified Plaintiff of the screen and appropriately prevented any of Plaintiff's confidential information from being revealed. To require law firms to rely on anything other than what is reasonable, given the totality of the circumstances of the specific case, would require firms to automatically maintain a list of former "Prospective Clients" and institute a conflict checking procedure for these prospective clients, assuming, of course, that all can agree on the definition of a former "Prospective Client." In the Court's view, such a sweeping requirement would be unreasonable.

At the time that Defendants contacted MDMC to represent them, in March 2005, there was no indication of a potential conflict. Mr. Scrivo and Mr. Compoli were not involved in that communication with Defendants and were not assigned to the case. Thus, there was no

reasonable basis for erecting a screen at that time.  In the same month, Ms. Gardiner conducted a deposition of Plaintiff on an unrelated class-action suit against Johnson & Johnson.  (Pl's Br. at 4).  Ms. Gardiner questioned Plaintiff about her medical history and the reasons for her termination from Ethicon, (T:8-19 to 23; T:17-22-23), and about her recently filed Complaint. (T:8-22 to 25)(Gardiner Certif. at ¶11).  At no time did Plaintiff allege a potential conflict, even though she was apparently aware that Ms. Gardiner was from the same firm as Mr. Scrivo and Mr. Compoli.  Neither did Plaintiff allege a conflict during her *pro se* appearance in front of this Court at the initial Rule 16 conference on June 9, 2005.  Thus, there was no reasonable basis for erecting a screen at any time prior to July 2005.

     Finally, in July 2005, Plaintiff retained her current counsel, Zuckerman & Fisher.  At that time, Plaintiff's Counsel advised MDMC of the potential conflict with Mr. Scrivo and Mr. Compoli.  (Gardiner Certif. at ¶ 12).  Ms. Gardiner questioned both attorneys to determine if they remembered their prior contact with Plaintiff.  *Id.* at ¶ 13.  Neither attorney did so.  *Id*.  Mr. Compoli and Mr. Scrivo certify that they have little, if any recollection about the substance of the meeting with Plaintiff. (Compoli Certif. at ¶ 12; Scrivo Certif. at ¶ 3).  Specifically, Mr. Compoli states that "I am aware that I have an obligation not to reveal any confidential information relayed to me by the plaintiffs, should I recall any, and I am complying with the screening procedures in place in this action." (Compoli Certif at ¶ 12).  Mr. Scrivo similarly states that he has "no recollection of the content of the meeting [with Plaintiff] nor would I remember the plaintiffs if they were standing in front of me.  I have no recollection of any emails or telephone calls with either Ms. Ellis or her husband nor do I have any documents belonging to or pertaining to them." (Scrivo Certif. at ¶ 3).  He continues by stating that he is "aware of the ongoing

13

screening of me from this matter and am complying with it and have had, and will have, no involvement in it. I understand my obligation to keep confidential any information given to me by plaintiffs, should I recall any such information." (Scrivo Certif. at ¶ 5).

At that point, Ms. Gardiner alerted both attorneys to the conflict and advised them not to divulge any confidential information provided by Plaintiff. *Id. See also*, (Scrivo Certif. at ¶ 5 and Compoli Certif at ¶12). At the same time, Ms. Gardiner alerted the entire firm of the screen erected for this case. *Id.* MDMC then sent a notice to Plaintiff informing her that the screen was implemented and that Mr. Scrivo and Mr. Compoli would not reveal any potentially confidential information they may have received in their prior communications with Plaintiff.

Given that MDMC could not reasonably have been aware of the potential conflict created by Mr. Scrivo and Mr. Compoli's prior conversations with Plaintiff, until they were alerted by Plaintiff's Counsel in July 2005, the screen implemented in late July 2005 must be considered timely and reasonable under all the circumstances of this case. While Plaintiff claims that the screen should have been erected no later than Ms. Gardiner's deposition of Plaintiff in March 2005, there is no evidence that it was reasonable for Ms. Gardiner to suspect a potential conflict given the unrelated nature of the action and the absence of any indication by Plaintiff that she had consulted with Mr. Scrivo or Mr. Compoli. In addition, Plaintiff did not identify the possible conflict when she appeared before this Court as a *pro se* litigant. Therefore, MDMC's notification of a potential conflict with Mr. Scrivo and Mr. Compoli, created an effective and reasonably timely screen, thereby complying with the requirements of R.P.C. 1.18.

### III. CONCLUSION

Based on the above, the Court finds that no attorney/client relationship existed, and,

therefore, Plaintiff cannot be considered a former client under R.P.C. 1.9.  The Court further finds that Plaintiff is a former "Prospective Client" and MDMC is subject to R.P.C. 1.18 governing attorney conduct with former "Prospective Clients."  The Court also finds that pursuant to R.P.C. 1.18, MDMC erected a timely screen of Mr. Scrivo and Mr. Compoli, successfully preventing communication of any potentially confidential information from Mr. Scrivo and Mr. Compoli to any other attorneys at MDMC.   Accordingly, the Court holds that MDMC is not disqualified from representing Defendants in the present matter.

An appropriate Order accompanies this Memorandum Opinion

**October 25, 2005.**