\*NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| THERESA M. ELLIS and SCOTT A. ZUKOWSKI, w/h, | : <br> : <br> : <br> : Civil Action No. 05-726(FLW) <br> : <br> : **OPINION** <br> : <br> : <br> : <br> : <br> : |
| Plaintiffs, |  |
| v. |  |
| ETHICON, INC., JOHNSON & JOHNSON, INC., and JOHN DOE(S), |  |
| Defendants. |  |

**WOLFSON, District Judge**:

In the instant application, Plaintiff Theresa M. Ellis ("Plaintiff") seeks, inter alia, $387,481.35 in attorney's fees and $35,176.50 in costs in connection with litigating this suit, wherein she obtained a favorable jury verdict with respect to her discrimination claim pursuant to the Americans with Disabilities Act ("ADA") against Defendant Ethicon, Inc. ("Defendant"). Previously, on November 16, 2009, the Court denied Defendant's motion for judgment or a new trial and awarded Plaintiff back pay in the amount of $42,400, along with prejudgment interest, and an amount to compensate Plaintiff for any negative tax consequences. The Court also reinstated Plaintiff to her position at Ethicon in lieu of front pay. To that end, the Court advised Plaintiff to submit an application for attorney's fees and costs, along with the appropriate calculations to adjust the back pay award to present value, to add prejudgment interest and include an appropriate amount compensating for negative tax consequences. In response to the Court's Order, Defendant now moves to alter the judgment pursuant to Fed. R. Civ. P. 59(e) with respect to adjusting the back pay award to

present value, and it opposes, in part, Plaintiff's application for fees and costs. For the reasons stated herein, the Court will award Plaintiff $340,858.85 in fees and $37,926.50 in expenses and costs. The Court will amend its previous ruling regarding back pay consistent with this Opinion.

## Background

Since the facts of this case have been extensively recounted in various opinions, the Court will not repeat them here. However, the Court will incorporate, and refer to, the facts set forth in its November 16, 2009 Opinion for the purpose of these motions.

## Discussion

### I. Attorneys' Fees and Costs

According to the Court's instructions, Plaintiff files the instant application for attorneys' fees and costs associated with this litigation. In support of her application, Plaintiff relies on various exhibits and certifications, including the certification of Plaintiff's counsel, Elizabeth Zuckerman, Esq. and the Declaration of Fredric J. Gross, Esq., an experienced employment attorney practicing in New Jersey, to justify her request of $387,481.35 in fees and $35,176.50 in costs. Defendant raises three distinct objections to Plaintiff's fee application: (1) a $400 hourly rate is not reasonable; (2) a lower rate should apply to associate-level work performed by Ms. Zuckerman; and (3) fees should not be awarded in connection with filing a motion to disqualify. Defendant otherwise does not object to the number of hours expended on the litigation.

The Americans with Disabilities Act permits courts to award reasonable attorneys' costs to a prevailing party. The statute provides that "[i]n any action or administrative proceeding commenced pursuant to this Act, the court or agency, in its discretion, may

allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205.

Plaintiff, the prevailing party in this case, is not automatically entitled to compensation for all the time her attorneys spent working on the case; rather, a court awarding fees must "decide whether the hours set [forth] were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" Student Pub. Interest Research Group v. AT & T Bell Lab., 842 F.2d 1436, 1441-42 (3d Cir. 1988)(citation and quotation omitted).[1] A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable. See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990); see also Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997). To initially satisfy this burden, "the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" Rode, 892 F.2d at 1183 (quotation omitted).

Under the ADA, the determination of a reasonable fee begins by calculating a lodestar, which is the product of hours counsel reasonably worked on the litigation and a reasonable hourly rate. Lanni v. State of New Jersey, 259 F.3d 146, 149 (3d Cir. 2001); Public Interest Research Group of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995)("PIRGNJ"); Damian J. v. Sch. Dist. of Phila., No. 08-2520, 2009 U.S. App. LEXIS 28255, at *5-6 (3d Cir. Dec. 23, 2009). Thus, there are two components to the reasonable fee analysis: the rate charged and the time expended. The lodestar is the presumptively

---

[1] "[Third Circuit] case law construing what is a reasonable fee applies uniformly to all fee shifting statutes." Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 677 (3d Cir. 2002) (alteration, quotation marks and citation omitted).

reasonable fee. Planned Parenthood of Cent. New Jersey v. Attorney General of the State of New Jersey, 297 F.3d 253, 265 n. 5 (3d Cir. 2002).

"It is the general rule that a reasonable hourly rate is calculated according to the prevailing market rates in the community." S.D. v. Manville Bd. of Educ., 989 F.Supp. 649, 656 (D.N.J. 1998). "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." Id. (citations omitted). Moreover, the current market rate is the rate at the time of the fee petition, not the rate when the services were performed. Lanni v. State of New Jersey, 259 F.3d 146, 149 (3d Cir. 2001)("To take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed")(quoting Rendine v. Pantzer, 141 N.J. 292 (1995)); see Rode v. Dellarciprete, 892 F.2d 1177, 1188-89 (3d Cir. 1990) (describing petition based on current rates as premised on a theory of "delay compensation"). "A current market rate is exactly that - a reasonable rate based on the currently prevailing rates in the community for comparable legal services." Lanni, 259 F.3d at 150. Once the hourly rate is set, then that rate is multiplied by the numbers of hours reasonably expended to arrive at the amount of the fee award. Id.

Significantly, the Court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party. Bell v. United Princeton Properties, Inc., 884 F.2d 713, 719 (3d Cir. 1989). But once the opposing party has made a specific objection, the burden is on the plaintiff to justify the size and reasonableness of her request. Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 713 (3d Cir. 2005).

In reviewing a fee application, a district court must conduct a "thorough and searching analysis" to identify such charges. Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001). As noted above, Defendant objects to Plaintiff's fee request on three separate grounds; the Court will address each contention below.

### A.    Hourly Rate

Plaintiff is seeking an hourly rate of $400 for Ms. Zuckerman and Mr. George W. Fisher, Esq., $375 for Mr. Richard Yaskin, Esq.,[2] and $125 for Ms. Priya Vimalassery, a paralegal. Defendant claims that the hourly rate for Ms. Zuckerman and Mr. Fisher is unreasonable. It reasons that the record establishes that Plaintiff retained Ms. Zuckerman and her firm at a "top" rate of $300 per hour, see Zuckerman Aff., ¶ 4, and this billing rate is the best evidence of the market rate. To this end, Defendant has parsed through Plaintiff's exhibits and certifications and discredits each of Plaintiff's supporting documents.

In 2005, Plaintiff signed a Retainer Agreement with Zuckerman & Fisher, LLC. The Agreement provided that the then hourly rate for Ms. Zuckerman and Mr. Fisher was $300. Zuckerman Aff., ¶ 4. A couple of years later, the Zuckerman Firm's billing rate increased to $350. Id., ¶ 8. However, effective January 1, 2010, the billing rate increased again to $400 - Plaintiff is requesting this amount as the hourly rate. Id. While the hourly rate quoted in Plaintiff's Retainer Agreement is helpful in determining a reasonable hourly rate, the Third Circuit has instructed courts to look to the applicant attorneys' customary billing

---

[2]Mr. Yaskin is an attorney who assisted Ms. Zuckerman at the inception of this case. The Court notes that Defendant does not object to Mr. Yaskin's hourly rate or the number of hours he spent in this litigation.

rate for fee-paying clients <u>at the time</u> the fee petition was filed. <u>Lanni</u>, 259 F.3d at 150; <u>PIRGNJ</u>, 51 F.3d at 1185. In that regard, in the first instance, the Court finds the $400 hourly rate unreasonable. At the time this application was filed in December 2009, the Firm's hourly rate was $350. Therefore, there is no basis for the Court to permit a $400 hourly rate when all of the work performed by Ms. Zuckerman and Mr. Fisher, up to and including the filing of this request, are prior to the rate increase in 2010.

Rather, the Court finds the hourly rate of $350, which was the Firm's hourly rate at time this petition was filed, reasonable. The starting point in determining a reasonable rate is the experience of the attorneys. <u>See</u> <u>Tenafly Eruv Ass'n v. Borough of Tenafly</u>, 195 Fed. Appx. 93, 97 (3d Cir. 2006). There is no dispute that Plaintiff's attorneys are experienced lawyers in the field of employment discrimination. Indeed, Ms. Zuckerman has cited to many published cases in which she has represented plaintiffs, and she has been representing plaintiffs in employment disputes since 1990. Mr. Fisher also has substantial trial experience in both state and federal courts. Plaintiff's evidence – a survey of cases discussing hourly rates and the Declaration of Mr. Gross[3] – support the reasonableness of the $350 hourly rate, which falls within the norm of New Jersey attorneys with similar positions and experience. <u>Id.</u>; Zuckerman Aff., ¶¶ 12(e)-(f); <u>see also</u> Gross Decl.

---

[3] Defendant contests the probative value of Mr. Gross' Declaration because it maintains that there is no showing that Ms. Zuckerman's experience and expertise are similar to Mr. Gross or other counsel discussed by him. The Court disagrees. Mr. Gross, an attorney who practices in New Jersey, attests to the range of prevailing rates charged by other employment attorneys in the State. In fact, Mr. Gross specifically delineates the rates of attorneys who work in employment boutique firms, such as Zuckerman & Fisher. According to Mr. Gross' Declaration, the $350 hourly rate falls within the low-end of the reasonable range of the rates charged by other attorneys with similar experience. <u>See</u> Gross' Decl., ¶¶ 17-23.

Although Defendant criticizes Plaintiff's supporting evidence, Defendant neither presents any contrary evidence nor cites to a single authority that stands for the proposition that this Court is bound by the rate negotiated in the Retainer Agreement at the inception of this case in 2005.  <u>Smith</u>, 107 F.3d at 225 ("Once the plaintiff has carried this burden [i.e., submitting evidence of the appropriate hourly rate], [the] defendant may contest that <u>prima facie</u> case only with appropriate record evidence . . .").  Instead, the Court notes that this case spans more than five years.  While the Retainer Agreement set forth a $300 hourly rate, the majority of the attorney's billable hours occurred after the rate increased to $350, particularly since the bulk of the time charged was in 2008-2009, when Ms. Zuckerman and Mr. Fisher prepared and conducted trial, and filed pre- and post-trial motions. Accordingly, pursuant to <u>Lanni</u>, the Court is satisfied that Plaintiff has demonstrated that the hourly rate of $350 is reasonable.

### B.    Associate-Level Work

At the outset, Defendant does not take issue with either the number of hours or the hourly rate of the paralegal.  Rather, Defendant contends that 159.12 of the attorneys' billable hours, which include time for legal research and drafting certain correspondence, should have been performed by an associate or other less experienced attorney, and thus, these hours should not be compensated at the lead-attorney hourly rate applicable to Ms. Zuckerman and Mr. Fisher.  The Court disagrees.

Although a court must exclude hours that reflect "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates," delegation is neither always possible in a small firm nor always desirable. <u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670, 677 (3d Cir. 1983); <u>Sheffer v. Experian</u>

Information Solutions, Inc., 290 F. Supp. 2d 538, 550 (E.D. Pa. 2003).  Here, Defendant's argument with regard to the duty to delegate presupposes that Plaintiff's lead attorneys readily have junior associates at their disposal. See Poston v. Fox, 577 F. Supp. 915, 919-20 (D.N.J. 1984) (finding that it is not always possible to delegate in small office); see also Roldan v. Phila. Hous. Auth., Civ. A. No. 95-6649, 1999 U.S. Dist. LEXIS 19093, at *14-15 (E.D. Pa. Dec. 7, 1999) (holding that reduction in rates is unwarranted in office that is understaffed and where no less experienced attorney was available to perform tasks). Although Plaintiff was represented by attorneys from a law firm, Zuckerman & Fisher, that firm has no access to junior associates.  See Zuckerman Supp. Aff. ¶ 3.  (indicating that Zuckerman & Fisher only consists of two founding partners).  Given the unavailability of junior attorneys to work on this litigation, "this Court does not find Plaintiff's attorneys' non-delegation of responsibilities unreasonable."  Sheffer, 290 F.Supp.2d at 550.

Furthermore, "it is reasonable for lead trial counsel to desire to expend his or her own time on some activities that, although within the competency of less highly paid associates, are better performed by the lead counsel to ensure the smooth functioning at trial."  Id.  Having reviewed Defendant's chart which consists of billable hours that it contends should have been delegated to associates, the Court can only find two instances, totaling .30 billable hour for faxing, that are not otherwise research tasks and drafting legal correspondence.  However, these instances of non-delegation are not frequent enough to mandate reducing the number of hours that will be computed in the lodestar. See Poston, 577 F. Supp. at 920 ("The court will not reduce the number of hours worked on this basis for it finds that the hours of work that could have been effectively delegated are de minimis").

8

### C.     Hours Spent on Motion to Disqualify Defense Counsel

Defendant posits that the portion of Plaintiff's fee application, which consists of time for the filing of a motion to disqualify defense counsel, should be excluded merely because that motion was not successful and was not necessary to Plaintiff prevailing on her ADA claim. Importantly, Defendant does not contend that the time spent preparing the motion was excessive. In support of its position, Defendant cites to case law which addresses unsuccessful claims. Indeed, courts should not reduce a fee award "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). Child Evangelism Fellowship of New Jersey v. Stafford Township School District, No. 02-4549, 2006 U.S. Dist. LEXIS 62966, at *62 (D.N.J. Sep. 5, 2006)("there mere fact that the Motion to Enforce the Preliminary Injunction was unsuccessful . . . does not require this Court to reduce [CFE's] fee award"). To that end, the Third Circuit has instructed that "[t]he mere failure of certain motions or the failure to use depositions is insufficient to warrant a fee reduction . . . ." Blum v. Witco Chemical Corp., 829 F.2d 367, 378 (3d Cir. 1987). Rather, the inquiry should be focused on whether the filed motion was "necessary" and "useful." See, e.g., Planned Parenthood v. AG, 297 F.3d 253, 270-71 (3d Cir. 2002)(while the motion for summary judgment was not filed, the work on the motion was 'necessary' and 'useful'").

Here, the Court finds that the filing of the motion to disqualify in this case was necessary. At the time, Plaintiff filed the motion because she believed that she was a former client of defense counsel's firm McElroy, Mulvaney, Deutsche and Carpenter in a matter substantially similar to the present case. Plaintiff contended that defense counsel's representation of Defendant in this case was contrary to the prohibition against

9

representing current clients with adverse interests to former clients. While defense counsel was not disqualified, the Magistrate Judge rendered a lengthy opinion resolving certain intricate issues of attorney conduct pursuant to New Jersey's Rules of Professional Conduct. Having reviewed the motion and that court's opinion on this matter, this Court is satisfied that filing of the motion was necessary to resolve allegations of possible conflict of interest. Accordingly, time billed for this motion will be included in the fee award. Davis v. Advanced Care Techs., Inc., No. 06-2449, 2007 U.S. Dist. LEXIS 74728, at *13-14 (E.D. Ca. Sep. 26, 2007) ("The motion to remand, however, was part of the hours reasonably spent in litigating the underlying declaratory relief matter and was not a separate claim, but rather a method of pursuing Davis' ultimately successful claim"); James v. Chichester Sch. Bd., No. 96-7683, 1999 U.S. Dist. LEXIS 2831, at *4-5 (E.D. Pa. Mar. 2, 1999).

### D.     Calculation of Fees and Costs

The Court now calculates the fee award consistent with the rulings herein. First, the Court has reviewed Plaintiff's fee schedule. Because the Court has rejected Defendant's contention regarding delegation of duties to associates, all of the billable hours of Ms. Zuckerman and Mr. Fisher will be credited accordingly. The Court remarks that Defendant did not object to the amount of time billed by the attorneys in this litigation. Indeed, the Court's review did not reveal any excessive or redundant billable hours.[4] To that end, Ms. Zuckerman's and Mr. Fisher's total billable hours accrued during the representation of this case are 932.45. Mr. Yaskin's total billable hours are 26.22. Next, because the Court finds $350 is the reasonable hourly rate for Ms. Zuckerman and Mr. Fisher, and Defendant does

---

[4]Indeed, Ms. Zuckerman certifies, and the record reflects, that most of Mr. Fisher's time spent in this litigation was not billed to Plaintiff.

not object to Mr. Yaskin's hourly rate of $375, the lodestar amount is therefore $336,190.10. In addition, Ms. Vimalassery, the paralegal, billed a total of 37.35 hours at an hourly rate of $125, which yields a total of $4,668.75 – this calculation was not contested by Defendant. Accordingly, the total fee award is $340,858.85.

Finally, Defendant did not object to Plaintiff's request for expenses and costs in this litigation. Plaintiff has documented expenses in the amount of $37,926.50.[5] Having reviewed this documentation, the Court finds the full amount to be reasonable and compensable.

## II.   Back Pay Award and Motion to Amend Judgment

To begin, pursuant to the Court's instructions in its Opinion dated November 13, 2009, Plaintiff sought the assistance of an expert in: (1) calculating prejudgment interest for the back pay award of $42,400; adjusting the award to present value; and adding an amount to account for negative tax consequences. At the outset, the expert, John Vlasac, certifies that based on his analysis, there is no adverse tax consequence attributable to the lump sum receipt of Plaintiff's back pay award. Next, Plaintiff proposes that the Court modify the back pay award by assuming a 4.85% increase in salary that Plaintiff projects that she hypothetically would have earned at Ethicon from October 21, 2001 to October 20, 2004. The Court rejected such a proposal previously "because Plaintiff did not produce any evidence at trial with respect to bonuses or fringe benefits that she would have received had

---

[5]This amount includes $35,176.50 set forth in Ms. Zuckerman Affidavit, which Defendant did not contest, and an additional $2750.00 for the expert cost of John Vlasac, CPA. Because the Court instructed Plaintiff to include certain calculations in connection with the back pay award, which required the assistance of an expert, the Court finds this additional amount reasonable.

she stayed at Ethicon, the Court will not speculate as to the amount of these benefits, and thus, will not consider them in calculating back pay." Here, Plaintiff does not point to any evidence that the Court overlooked, or produce any other newly discovered evidence to support her proposal. Accordingly, Plaintiff's request on this basis is denied.

With respect to prejudgment interest and an upward adjustment of the back pay award to present value, Defendant asks the Court to amend its previous ruling.[6] A motion to alter or amend a judgment is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to move to alter or amend a judgment within twenty-eight days of entry. Fed. R. Civ. P. 59(e). The purpose of this Rule is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); see Livingston v. United States, No. 09-546, 2009 U.S. Dist. LEXIS 97539 (D.N.J. Oct. 20, 2009). To that end, a judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the Court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café, by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)); Holsworth v. Berg, 322 Fed. Appx. 143, 146 (3d Cir. 2009). "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision," and

---

[6]Motion to alter or amend the judgment "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). On November 30, 2009, Defendant timely filed its Rule 59(e) motion after the entry of the Court's Order on November 16, 2009.

that oversight negatively affected the movant. Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp, 996 F. Supp. 409, 442 (D.N.J. 1998). By contrast, mere disagreement with the district court's decision is inappropriate on a motion to alter judgment, and should be raised through the appellate process. Id. (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd. 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)). "The Court will only entertain such a motion where the overlooked matters, if considered by the Court, might reasonably have resulted in a different conclusion." Assisted Living, 996 F. Supp. at 442.

Defendant urges that combining a present value adjustment on past loss with prejudgment interest would be improperly duplicative. Defendant reasons that both calculations address the same time value of money. Plaintiff does not substantively respond. Rather, she relies on the Court's previous Opinion in calculating the back pay award. The Court, however, agrees that this Court's prior ruling would result in an error of law because of the duplicative remedy, and therefore, will reconsider this issue.

"[A]djusting to present value is equivalent to awarding prejudgment interest." Sokol Crystal Products, Inc. v. DSC Communications Corp., 15 F.3d 1427, 1434 (7th Cir. 1994)). That is because an award of prejudgment interest itself adjusts an award for past loss to present value: "Not all portions of a verdict are economic in character, and only the sum that represents past economic loss is properly adjusted to present value through an interest calculation. [Past economic loss requires an] adjustment for the time the successful plaintiff's money was out of the market which prejudgment interest provides." Poleto v. Consolidated Rail Corp., 826 F.2d 1270, 1278 n.14 (3d Cir. 1987), abrogated on other grounds, Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827 (1990); Dominator,

Inc. v. Factory Ship Robert E. Resoff, 768 F.2d 1099, 1106 (9th Cir. 1985) ("[p]rejudgment interest is awarded so that the award will reflect the present value of plaintiff's claim"); Chace v. Champion Spark Plug Co., 725 F. Supp. 868, 872 (D. Md. 1989) ("And it makes no difference whether plaintiffs characterize the value of losing the benefit of money as prejudgment interest or they simply bring back pay to present value, since the amounts so computed are compensatory in nature").

Indeed, having recalculated the numbers, the Court finds that both present value and prejudgment interest do precisely the same thing: apply a rate of return to account for the time value of money – that is, the "loss of the use of [Plaintiff's] investment or [plaintiff's] funds from the time of the loss until judgment is entered." Arco Pipeline Co. v. SS Trade Star, 693 F.2d 280, 281 (3d Cir. 1982). Simply put, present valuation and prejudgment interest both are a measure of the time value of money, they are duplicative, and only one type is permitted. In that regard, the Court amends its previous ruling on this issue so as to correct an error of law.

In considering this issue, the Court need not credit Plaintiff's proposed methods because she applies the present value of the back pay award in calculating the amount of prejudgment interest. Since the Court has rejected this approach as duplicative here, the Court will recalculate the back pay award as follows:

| Back Pay Period | Back Pay | Average Time to November 30, 2009 | Interest on Back Pay at 4% |
|---|---|---|---|
| 10/22/01 - 12/15/01 | $13,369 | 8.03 year | $4,294.12 |
| 12/17/01 - 12/31/01 | $322 | 7.94 years | $102.27 |
| 2002 | $10,605 | 7.42 years | $3147.56 |
| 2003 | 0 | 6.42 years | 0 |
| 1/1/04 - 8/4/04 | 0 | 5.63 years | 0 |
| 8/4/04 - 10/20/04 | $18,104 | 5.23 years | $3,787.36 |
| **TOTAL** | $42,400 | | $11,331.31 |

As an explanation, the Court previously used the above-delineated Back Pay Periods in which Plaintiff was entitled to an award and calculated the amount of back pay in each of the prescribed periods. Accordingly, the total amount of back pay is $42,400. Next, the Court utilized the 4% interest rate, which was decided in the Court's previous Opinion, to calculate the prejudgment interest in each of the periods wherein back pay was awarded. The Court also must calculate the number of years from the midpoint of the applicable back pay period to November 30, 2009. The Court then applies the following formula to arrive at the appropriate interest for each year back pay is awarded:

(the back pay amount) x (.04) x (number of years) = interest

In that regard, the total prejudgment interest is $11,331.31. Accordingly, Plaintiff's back pay award is $53,731.31.[7]

---

[7] Indeed, Plaintiff proposes that the present value of the back pay award of $42,4000 in 2009 is $51,618, which is substantially similar to the back pay award including prejudgment interest. However, for the reasons state above, applying both the present value and prejudgment interest will be duplicative. As such, the Court's award for back pay will be consistent with the calculations herein.

**<u>Conclusion</u>**

      For the reasons set forth above, Plaintiff's motion is granted in part, denied in part. Defendant's motion is granted.  Plaintiff shall be awarded $53,731.31 in back pay; $340,858.85 in fees and $37,926.50 in expenses and costs.

DATED:  March 1, 2010

                                        /s/ Freda L. Wolfson
                                        FREDA L. WOLFSON
                                        United States District Judge